UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALVIN LAVON SMITH, JR.,

                Petitioner,                Case Number: 02-10322-BC
                                                                 Honorable David M. Lawson

v.

KENNETH McGEE,

                Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Alvin Lavon Smith, Jr., presently confined at the Macomb Correctional Facility in New Haven, Michigan, has filed a *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner challenges his convictions for first-degree murder, Mich. Comp. Laws § 750.316(1)(a), and possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws §750.227b. He was convicted at a bench trial in the Washtenaw County, Michigan circuit court in 1996. He received a mandatory life sentence for the murder and a consecutive two-year prison term for the felony firearm conviction. The petitioner asserts that hearsay testimony was admitted at his trial in violation of the Confrontation Clause; the trial court made factual findings unsupported by the evidence; and he was denied a fair trial where a lay witness erroneously was allowed to present opinion testimony. The respondent contends that the petitioner's claims are not cognizable on federal habeas corpus review and are otherwise without merit. The Court finds that the petitioner's conviction does not violate federal law; therefore the petition will be denied.

I.

The convictions arose from the fatal shooting of Albert Taylor outside the Elks Club in Ypsilanti Township on April 8, 1995. The prosecutor presented evidence that the petitioner conspired with Montez Brooks and Taniesha Ford to kill Taylor by lying in wait for him outside the club. The prosecution's theory was that the three planned Taylor's murder that night after Taylor learned that Brooks and Ford planned to marry and started talking about killing Brooks. The petitioner testified in his own defense, explaining that Taylor approached him with a gun and he panicked and shot Taylor in self defense.

The trial court sentenced the petitioner on May 31, 1996. On direct appeal, the Michigan Court of Appeals affirmed the petitioner's convictions in an unpublished *per curiam* opinion, *People v. Smith*, No. 196894 (Mich. Ct. App. Mar. 13, 1998), and on December 30, 1998, the Michigan Supreme Court denied leave to appeal. *See People v. Smith*, 459 Mich. 934; 615 N.W.2d 737 (1998) (table).

The petitioner initially filed a habeas corpus petition in this Court on January 7, 2000. The Court dismissed the petition without prejudice on July 5, 2002 because some of the claims in the petition were unexhausted, but informed the petitioner that he could file a new petition containing only the exhausted claims.

On December 12, 2002, the Court received the pending habeas corpus petition. In it, the petitioner stated the following grounds for relief:

I. Mr. Smith was denied his federal constitutional right of confrontation by the admission, over objection, of a large amount of damaging hearsay testimony.

II. Defendant's first-degree murder conviction must be reversed because it is based upon factual findings that are not supported by the record;

        in the alternative, this case should be remanded for additional findings of fact.

III.    Mr. Smith was denied a fair trial when the trial court permitted a lay witness to offer opinion testimony going to an ultimate issue in the case.

The petitioner's grounds for relief were each raised on direct review of the petitioner's convictions.

The respondent filed a motion to dismiss and for summary judgment urging the Court to dismiss the petition as untimely. In an opinion and order dated March 16, 2004, the Court determined that the petitioner's habeas petition was not barred by the statute of limitations because he was eligible for equitable tolling. The Court denied the respondent's motion and ordered the respondent to file an answer to the allegations contained in the habeas petition.

The respondent has answered the petition, reiterating his rejected argument that the habeas petition is barred from review by the petitioner's failure to comply with the statute of limitations. He also argues that the petitioner's claims are not cognizable in federal habeas corpus proceedings and are otherwise without merit.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), govern this case because the petition was filed after the Act's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 322 (1997). The Act "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

    As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases: An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that

>was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000); internal quotes omitted). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

>A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
>A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially

>indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

In his first habeas claim, the petitioner alleges that he was denied a fair trial and the right of confrontation by the admission of damaging hearsay testimony. The petitioner points to three instances in which he says hearsay testimony was allowed by the trial judge. He challenges the testimony of Billy Weaver, who was present at the club on the night of the shooting, when he testified that he heard Taniesha Ford tell the victim, Albert Taylor, that she intended to marry Montez Brooks and Taylor responded by saying that he would not permit her to marry Brooks.

Next, the petitioner challenges the testimony of Maurice Bridges, who was present in a truck with Brooks, the petitioner, and Ricky Love on the way to the club, when he testified that Brooks spoke with Ford by telephone and announced that she told him Taylor was at the club talking about killing Brooks.  Finally, the petitioner objected to testimony by Bridges who said that Brooks received a telephone call from Ford when the group reached the club, and that Brooks announced that Ford told him who were Taylor's companions at the club.  None of the declarants testified at trial.

The Michigan Court of Appeals ruled that Weaver's testimony relating the statements by Ford and Taylor about the intended marriage of Ford and Brooks were not hearsay because they were not offered to prove the truth of the matter asserted.  Rather, they were offered for their impact on the petitioner to establish a motive for the conspiracy to kill Taylor.  This Court agrees with that assessment.  Testimony is hearsay under Michigan law only if it "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Mich. R. Evid. 801(c).  Weaver's testimony did not amount to inadmissible hearsay evidence.

The court of appeals also held that Bridges's testimony describing the statement by Brooks that Ford told him over the phone that Taylor was threatening Brooks was also not admitted for the truth of the matter asserted.  The court held that this statement only served to show that Brooks and the petitioner were aware of a threat.  The state court also held that Bridges's testimony that Ford called Brooks and told him who was with Taylor at the club was offered simply to show the fact that a conversation occurred, rather than for the truth of the statements.  The court held that because these statements showed that Brooks and Ford were frequently in contact that night in the

-6-

defendant's presence before the killing, they supported the finding that the three engaged in a conspiracy in kill the victim.

The Court agrees with the state court's analysis of the evidence. Because this evidence was offered for a non-hearsay purpose, it was not barred by the rule against hearsay. Moreover, state court errors regarding the admission of evidence generally are not cognizable on federal habeas review unless there is a constitutional violation or the error resulted in the denial of fundamental fairness. *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994); *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Hearsay evidence may run afoul of the Constitution if a defendant's right to confront and cross-examine the declarant is abridged. The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "[T]he Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The Confrontation Clause promotes reliability in criminal trials by providing defendants the opportunity for cross-examination. *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987); *see also Stevens v. Bordenkircher*, 746 F.2d 342, 346 (6th Cir. 1984). The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect . . . from erosion." *Pointer*, at 404-05 (quoting *Greene v. McElroy*, 360 U.S. 474, 496-97 (1959)). Cross-examination has been described as "the greatest legal engine ever invented for the discovery of truth." *California v. Greene*, 399 U.S. 149, 158 (1970) (citation and internal quotations omitted).

In this case, the petitioner was afforded his full right to cross-examine the witnesses against him. Because the evidentiary value of the out-of-court statements made by Ford and Brooks was

the fact that the words were uttered, rather than the truth of the statements by these declarants, the declarants' credibility was irrelevant. Instead, the issue that arose from the testimony is the question whether the statements were made at all. For instance, it did not matter whether Tanisha Ford in fact intended to marry Montez Brooks; it only was relevant that Albert Taylor believed that she did and responded with a threat to prevent the marriage. It was the statement's impact on Taylor that was the point of the evidence. Since Billy Weaver testified that the statement was made, and the petitioner had the opportunity fully to cross-examine Weaver at trial, there was no Confrontation Clause violation.

The same analysis applies to the testimony of Maurice Bridges. The value of his testimony was found in his report that the respective statements were made in the petitioner's presence in order to show their impact on him. The probative force of the statements depended not at all on the credibility of the declarants. The petitioner was able to cross-examine Bridges at trial.

Because the petitioner's right to cross-examine Weaver and Bridges at trial was not curtailed, he did not suffer a violation of his right to cross-examine witnesses against him guaranteed by the Sixth Amendment. The admission of the challenged evidence did not violate federal law.

B.

In his second habeas claim, the petitioner alleges that the trial court's factual findings were not supported by the testimony or based on evidence presented by the prosecutor. The petitioner's claim is premised on a violation of Michigan Court Rule 2.517, which states in part: "In actions tried on the facts without a jury . . . the court shall find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment." The Michigan Court of Appeals adjudicated

this claim on the merits and concluded that reversal was not required because the trial court's findings were not clearly erroneous.

Because the petitioner's argument is based entirely on an alleged violation of state procedrual law, it will not furnish a basis for relief under 28 U.S.C. § 2254. Although a reviewing court must determine whether a state court's conclusion "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), the court may grant an application for writ of habeas corpus only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). In habeas corpus cases brought by state inmates, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). This claim is based on state law and is therefore not cognizable on habeas review. *See Pulley v. Harris,* 465 U.S. 37, 41 (1984).

The petitioner also cites *Murray v. Carrier*, 477 U.S. 478 (1986) and *Schlup v. Delo*, 513 U.S. 298 (1995), in support of this ground for relief, apparently asserting that he is actually innocent. However, although actual innocence may excuse procedural default, it does not constitute a constitutional claim in itself. *See Herrera v. Collins*, 506 U.S. 390, 404-05 (1993), *cited in Schlup*, 513 U.S. at 314. The Sixth Circuit has interpreted *Herrera v. Collins* to hold that federal courts must not make independent determinations of guilt or innocence in habeas cases. *See Tyler v. Mitchell*, 416 F.3d 500, 505 (6th Cir. 2005).

Because the petitioner maintains that the trial court erred in determining his guilt, states in his petition that "[t]he Defendant presented [sufficient] evidence of innocence," and cites *Jackson v. Virginia*, 443 U.S. 307 (1979), and *In re Winship,* 397 U.S. 358 (1970), the Court will construe

the petitioner's *pro se* claim as a constitutional challenge to the sufficiency of the evidence. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship,* 397 U.S. at 364. The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 318 (1979).

> [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 318-19 (internal citation and footnote omitted). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n.16.

In Michigan, first-degree murder is an intentional killing which is undertaken with premeditation and deliberation on the part of the defendant. *People v. Anderson*, 209 Mich. App. 527, 537, 531 N.W.2d 780, 786 (1995).

> Premeditation and deliberation require sufficient time to allow the defendant to take a second look. The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. Premeditation may be established through evidence of the following factors: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide.

*Ibid*. (citations omitted). Viewing the evidence in a light most favorable to the prosecution, the Court finds that a rational trier of fact could have determined beyond a reasonable doubt that the petitioner killed Taylor intentionally and with premeditation.

The petitioner first disputes the trial court's factual finding that the petitioner and his co-conspirators may have known about the .357 handgun in Billy Weaver's car and obtained the weapon either before or after the shooting. The petitioner argued that the presence of this weapon after the shooting was evidence that Taylor was armed when the petitioner panicked and shot him. Billy Weaver testified that he drove Albert Taylor to the Elks Club on the night of the murder and he placed a loaded .357 handgun under the driver's seat of the car before he and Taylor entered the club. Weaver was unsure whether he locked the car. (Tr. 5/3/1996, at 31-33). The petitioner testified at trial that he acquired a gun from Brooks before he, Brooks, and others reached the Elks Club. He claimed that when Taylor approached him with a gun, he shot Taylor in self-defense and picked up Taylor's .357 caliber handgun after the shooting to prove his self-defense claim. However, he also testified that he wiped fingerprints off the .357 handgun after the shooting. (Tr. 5/7/1996, P.M. session, at 25-41; 5/8/1996, at 7-8). The police found a .45 shell casing about six feet from Taylor's body. (Tr. 5/7/1999, at 106). The evidence presented at trial also suggested that Weaver had mentioned having the gun when he was in the club and that Ford was relaying information about the victim and those who accompanied him to Brooks as she waited for Brooks to arrive at the club. Because people entering the club passed through a metal detector and evidence presented at trial indicated that the victim was shot within seconds of leaving the club, a rational trier of fact could have found it unlikely that the victim took the .357 handgun out of Weaver's car before he was shot. In fact, the trial court reasoned that the petitioner's act of removing fingerprints from the .357 handgun supported the prosecutor's theory that the petitioner and his co-conspirators knew about the .357 and acquired it before or after the shooting. (Tr. 5/9/1996, at 29-30).

The petitioner also disputes the trial court's factual finding that Lamar Skinner's testimony was credible. The petitioner alleges that Skinner contradicted himself regarding almost every point on which he testified and that his testimony was "at war with the record." The petitioner points to several instances in the record where Skinner offered inconsistent or conflicting testimony. For example, Skinner testified at trial that the petitioner informed him that he was waiting to shoot someone (Tr. 5/6/1996, at 15), but Skinner testified at the preliminary examination that the petitioner said only that "he wasn't going to mess with me." (Tr. 5/8/1995, at 20, 36). Skinnner testified that he saw the gun used by the petitioner, but when he was impeached with his inconsistent preliminary examination testimony, he claimed that the transcript contained lies. (Tr. 5/6/1996, at 16-17, 39-40). Skinner maintained that Albert Taylor was shot in the face and fell backward when he was shot, but this was inconsistent with the forensic pathologist's conclusion that Taylor was shot in the back of the head and probably fell face down because he had abrasions on his face. The trial court nevertheless found Skinner credible (Tr. 5/9/1996, at 30), and the Michigan Court of Appeals stated that "questions of credibility are left to the trier of fact to resolve." *Smith,* No. 196894, at 3. Federal law is consistent with that pronouncement.

It is "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A court evaluating the sufficiency of the evidence may not reweigh the evidence or assess the credibility of witnesses on habeas review. *See Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). The petitioner's challenge to the sufficiency of the evidence on this ground is foreclosed.

The evidence presented at trial indicated that Taylor threatened Brooks by statements he made to Ford at the Elks Club before Brooks and the petitioner arrived. Ford exchanged several phone calls with Brooks on the way to the club, and Brooks stopped on the way to obtain a .45 caliber handgun, which he gave to the petitioner. When they reached the club, Brooks told Bridges and Love to go to the front of the club, and the petitioner seemed to pace toward the back of the building. People who entered the club passed through a metal detector; seconds after Taylor left the club and rounded the corner, the petitioner shot him in the back of the head and ran. Brooks told the petitioner to go to Ford's car, where the petitioner gave the gun to Ford and told her it belonged to Brooks. When the police first questioned the petitioner, he claimed that he knew nothing about the shooting. After he was arrested, the petitioner produced the .357 caliber handgun that he claimed Taylor had at the time of the shooting, but claimed that he had wiped it to remove fingerprints. Viewed in the light most favorable to the prosecution, the evidence showed that the petitioner waited for the victim outside of the club and shot him in the back of the head before the victim could have retrieved Weaver's gun from the car. The petitioner tried to conceal evidence of the crime by denying any knowledge of the shooting, then producing a weapon the victim supposedly brandished that was devoid of any fingerprints. A rational trier of fact could have concluded that the petitioner intentionally killed Taylor with premeditation and deliberation. The petitioner is not entitled to habeas relief on this claim.

## C.

The petitioner's final habeas claim is that he was denied a fair trial when the trial court permitted a lay witness to offer opinion testimony on an ultimate issue in the case. The lay witness was Lamar Skinner, who testified on direct examination by the prosecution that he encountered the

petitioner on the side of the building outside the Elks Club shortly before the shooting. The witness gave the following challenged testimony:

> Q  What was he [the petitioner] doing?
>
> A  Pacing, like.
>
> . . . .
>
> Q  Was there something about [the petitioner], the way you saw him pacing there, that made you apprehensive?
>
> A  Yeah.
>
> Q  What was that?
>
> A  When I got – thought something was going to go down or something like that.
>
> Q  Why did you think that?
>
> A  Just a feeling and the way he was acting.
>
> Q  How was he acting?
>
> A  Like he was waiting for somebody.

(Tr. May 6, 1996, at 12-14). The defense objected to this statement and the trial court overruled the objection, explaining that it was a "present sense impression."

The petitioner asserts that the testimony that he appeared to be waiting for somebody embraced an ultimate issue, namely, whether he had been "lying in wait" for the victim. *See* Mich. Comp. Laws § 750.316(1)(a). The petitioner argues that the admission of this statement allowed a lay witness to offer an opinion as to the petitioner's guilt. *See People v. Parks*, 57 Mich. App. 738, 750, 226 N.W.2d 710, 716 (1975) (noting that "a witness cannot express an opinion concerning the guilt or innocence of a defendant"). The Michigan Court of Appeals adjudicated this claim on the merits and concluded that the trial court did not abuse its discretion by admitting the testimony.

"Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d at 494 (citing *Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991)). In Michigan, lay witnesses are permitted to offer "opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Mich. R. Evid. 701. Skinner's testimony falls within the scope of this rule.

The witness testified that he saw the petitioner pacing beside the building and he thought that "something was going to go down" because of "the way he was acting." Skinner's testimony that the petitioner looked like he was waiting for somebody was rationally based on his perceptions. It amounted to his conclusion based on what he perceived at the time. Skinner's opinion had its foundation on his personal knowledge, and Skinner was subject to cross-examination on his assertion. Skinner's statement that the petitioner looked like he was waiting for someone was also helpful to a clear understanding of his testimony that he was apprehensive when he saw the petitioner. Moreover, testimony that the petitioner looked like he was waiting for someone was not dispositive of his guilt, although it certainly was relevant to prove an element of the crime: that the petitioner was lying in wait. However, because Skinner did not offer an opinion on the ultimate issue of the petitioner's guilt or innocence, his testimony that the petitioner appeared to be waiting for someone was not fundamentally unfair. Therefore, the alleged error does not rise to the level of a constitutional violation and will not furnish a ground for the issuance of the writ.

III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: August 22, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 22, 2006.

s/Tracy A. Jacobs  
TRACY A. JACOBS

---